IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| JENNIFER LU<br><br>        Plaintiff,<br><br>    vs.<br><br>LONGS DRUG STORES; JOHN DOES 1-10, DOE ENTITIES 1-10,<br><br>        Defendants. | CIVIL NO. 11-00563 DKW-BMK<br><br>**ORDER GRANTING DEFENDANT LONGS DRUGS STORES CALIFORNIA, LLC'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING DEFENDANT LONGS DRUGS STORES CALIFORNIA, LLC'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Before the Court is Defendant Longs Drugs Stores California, LLC's ("Longs") Motion for Summary Judgment ("Motion"), filed on June 19, 2013. Plaintiff Jennifer Lu ("Ms. Lu") opposed the Motion. A hearing was held on September 27, 2013. After careful consideration of the supporting and opposing memoranda, the accompanying documentation, argument of counsel, and the relevant legal authority, the Motion is hereby GRANTED.

## BACKGROUND

Ms. Lu was an employee at Longs beginning in 1990 up until the time of her termination in December of 2009. In 1995, she transferred from the Longs location in the Kaneohe Bay Shopping Center to the Kamehameha Shopping Center location. In 2007, Maylene Kuranishi ("Ms. Kuranishi") transferred from another store location to the Kamehameha Shopping Center location and became Ms. Lu's direct supervisor. Declaration of Jennifer Lu ("Lu Decl.") ¶¶ 5, 7, 11.

Ms. Lu alleges that she was subjected to workplace harassment by Ms. Kuranishi beginning in 2007 through 2008. According to Ms. Lu, Ms. Kuranishi verbally harassed Ms. Lu on several occasions, including making derogatory comments about Ms. Lu's accent (Ms. Lu is originally from Taiwan and speaks English with an accent). Ms. Lu alleges that she complained of this verbal harassment to the store manager. Lu Decl. ¶¶ 12–13.

Ms. Lu asserts that Ms. Kuranishi retaliated against Ms. Lu for reporting the harassment by: making false allegations of poor work performance by Ms. Lu; issuing several documented warnings; and continuing to harass and embarrass Ms. Lu on several occasions. In September 2008, Ms. Lu prepared and circulated a letter (signed by several of the Longs Kamehameha Shopping Center employees) to Longs's District and General Managers, regarding the hostile work

environment created by Ms. Kuranishi. Lu Decl. ¶¶ 14–20; Lu Decl., Ex. C (Sept. 2, 2008 letter).

Due to stress and depression, which she admits were caused by a combination of personal circumstances and Ms. Kuranishi's alleged conduct, Ms. Lu went on leave from work on December 8, 2008, and did not return to work at Longs. Around the time of going on leave, Ms. Lu initially saw Dr. Taying Yang ("Dr. Yang") for treatment of shingles that Ms. Lu purportedly acquired from the stress of her employment. Deposition of Jennifer Lu ("Lu Dep.") 109:5–23.

A few months later, Dr. Yang referred Ms. Lu to Dr. Edward Wu ("Dr. Wu"), a psychiatrist, to treat Ms. Lu for her psychiatric conditions. Ms. Lu first met Dr. Wu on February 6, 2009, and has been treated by him since then, at least up until the time of her deposition on July 13, 2012. Lu Dep. 112:11–24.

On February 27, 2009, Dr. Wu sent a letter to the General Manager of Longs (the "2/27/09 letter"). The entirety of the body of the letter states:

> Patient Jennifer Lu has been under psychiatric treatment since February 6, 2009 with symptoms of depression and stress related with her job. Especially, she has had some difficulty with her immediate supervisor. The stress at work has caused worsening of her depressive symptoms and also her physical symptoms which include diabetes and shingles. Her physical condition is under the care of Dr. Yang.
> It is my recommendation for her mental well-being that she would be allowed to transfer to a different Longs location/branch preferably Kaneohe Longs because her primary residence is in Kaneohe.
> Thank you for your kind consideration on this matter.

3

Lu Decl., Ex. D (2/27/09 letter).

While treating Ms. Lu, Dr. Wu prepared five disability certificates indicating that Ms. Lu was "totally incapacitated." Each certificate covered a one-month period beginning on February 25, 2009, through July 28, 2009. Lu Decl. ¶¶ 23, 25, 26, 29, 32; *see, e.g.*, Lu Dep., Ex. 39 (May 23, 2009 Disability Certificate).

Ms. Lu apparently received temporary disability ("TDI") benefits via Longs's insurer beginning at the time she went on leave until June 12, 2009. As part of the monthly recertification relating to those benefits, Dr. Wu represented on May 16, 2009, that Ms. Lu's ability to return to work was "uncertain at this time." Lu Decl., Ex. P at 000613 (Exhaustion of TDI Benefits Notice); *id.* at 000614 (May 16, 2009 physician statement for TDI benefits).

On June 1, 2009, Dr. Wu submitted to Longs the certification paperwork of a serious health condition under the Family and Medical Leave Act ("FMLA"). In the FMLA paperwork, Dr. Wu represented that Ms. Lu suffered from anxiety, depression, diabetes, and shingles. Dr. Wu represented that Ms. Lu could not perform her job functions due to these conditions and that her period of incapacity began on December 8, 2008, and would continue at least for one year, at which point she would be reevaluated. Lu Dep., Ex. 36 (June 1, 2009 FMLA documentation) at 000617–618.

On November 27, 2009, Dr. Wu updated the FMLA documentation and submitted it to Longs, representing that Ms. Lu would be incapacitated for at least an additional six months (i.e., until June 8, 2010) beyond the one-year period he had indicated in his previous FMLA documentation.  Lu Dep., Ex. 41 (November 27, 2009 FMLA documentation) at 000626–627.

Longs received the November 27, 2009 FMLA documentation on December 14, 2009.  At that point, Ms. Lu had been on leave for just over a year.  Longs decided to terminate Ms. Lu's employment because Ms. Lu had been on leave for a full year, would be incapacitated for at least another six months according to Dr. Wu, and had no likely date of return even after that six-month period ended.  Decl. of Tami Myers ¶ 2.  On December 18, 2009, Longs sent a letter to Ms. Lu, notifying her that her leave would expire on December 26, 2009, at which point she would be and was terminated.  Lu Decl., Ex. I (December 18, 2009 termination letter).

On July 2, 2010, Ms. Lu filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Hawai'i Civil Rights Commission, alleging age, disability, and national origin discrimination.  Lu Decl., Ex. K (Charge of Discrimination).  On July 11, 2011, the EEOC issued a Notice of Right to Sue.  Lu Decl., Ex. L (Notice of Right to Sue).

Ms. Lu then initiated this action on September 16, 2011. Unlike the broad allegations set forth in her EEOC Charge, the Complaint alleges a single cause of action for disability discrimination:

> Defendant violated Plaintiff's rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. [§§] 12102 et. seq. Plaintiff is a disabled person within the meaning of the ADA; Plaintiff is [a] qualified individual able to perform the essential functions of the job with reasonable accommodation (transfer); and Plaintiff suffered an adverse action because of her disability (termination). In addition, Plaintiff alleges that Defendant failed to enter into the interactive process with her and instead of reasonably accommodating her disability as her treating physician requested with a simple transfer, Defendant instead terminated her employment after nineteen (19) years of faithful service.

Complaint ¶ 47. Longs moves for summary judgment on the Complaint.

## STANDARD OF REVIEW

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v.*

*Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the Court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Thus, the moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party satisfies its burden, the nonmoving party must set forth "'significant probative evidence'" in support of its position. *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## **DISCUSSION**

Ms. Lu's sole cause of action is that Longs failed to provide a reasonable accommodation for her disability. "For [Ms. Lu] to establish a prima facie case under the Americans with Disabilities Act ("ADA") that [Longs] failed

7

to accommodate h[er] disability, [s]he must first demonstrate that: (1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of h[er] disability." *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). Longs does not dispute the first or third elements. Longs does contend, however, that Ms. Lu's inability to demonstrate the second element (i.e., that she was able to perform the essential functions of the job with reasonable accommodation) is fatal to her Complaint and entitles Longs to judgment as a matter of law.

> As to the second element,
>
> The Supreme Court has approved a multi-step burden shifting analysis in determining what potential accommodations are reasonable and which rise to the level of an undue hardship at the summary judgment stage. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002). Under that approach, a plaintiff must first show that the accommodation "seems reasonable on its face, i.e., ordinarily or in the run of cases." *Id.* The burden then shifts to the defendant to demonstrate the accommodation would pose an undue hardship in the case at hand. *Id.*

*Brown v. Potter*, 457 Fed. Appx. 668, 671 (9th Cir. 2011); *accord Giebeler v. M & B Associates*, 343 F.3d 1143, 1156 (9th Cir. 2003). Accordingly, it is Ms.

Lu's burden to initially demonstrate that the accommodation she requested (i.e., a transfer, as stated in the Complaint) was a reasonable one.[1]

I. **Transfer as a Reasonable Accommodation**

Longs contends that it is entitled to summary judgment because a transfer to avoid a supervisor, as a matter of law, is not a reasonable accommodation. In her briefing, Ms. Lu did not oppose Longs's arguments on this point. Further, at the hearing, counsel for Ms. Lu conceded, and the Court agrees, that the law forecloses Ms. Lu's arguments that a transfer to a different Longs store would have been a reasonable accommodation in this case. *See, e.g.*, Benson v. Cal. Corr. Peace Officers Ass'n, 2010 WL 682285, at *7 (E.D. Cal. Feb. 24, 2010) ("An employer, however, is not required to change a person's supervisor as a form of reasonable accommodation."); *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, Question 33 (EEOC Notice No. 915.002, Oct. 17, 2002) ("Does an employer have to change a person's supervisor as a form of reasonable accommodation? No. An employer does not have to provide an employee with a new supervisor as a reasonable accommodation."); *Ghoston v. Nissan N. Am., Inc.*, 2008 WL 879737,

---

[1] Ms. Lu contends that it is Longs's burden to simultaneously show that providing a reasonable accommodation would be an undue hardship. That burden, however, is only imposed once Ms. Lu establishes her prima facie case. *Barnett*, 535 U.S. at 401–02; *Brown*, 457 Fed. Appx. at 671; *Giebeler*, 343 F.3d at 1156. As discussed in this order, the Court concludes that Ms. Lu has not met her burden of establishing her prima facie case. Accordingly, there is no burden imposed on Longs to show an undue hardship.

at *5 (S.D. Miss. Mar. 30, 2008) (citing cases from four federal circuits and holding that "[e]mployers have no duty under the ADA to accommodate a restriction against working under a particular supervisor in any case").  Thus, counsel for Ms. Lu stated that she is no longer pursuing that argument.

Regardless, the Court additionally concludes that Ms. Lu has not satisfied her burden to show that a transfer would have allowed her to return to work so that she could perform the essential functions of her job.  "Reasonable accommodations are mechanisms to remove barriers or provide assistance to disabled individuals so that they can perform the 'essential functions' of employment positions."  *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001).  Ms. Lu alleges that Dr. Wu's 2/27/09 letter evidences her ability to immediately return to work, presumably once her requested transfer was approved.  But the 2/27/09 letter merely states Dr. Wu's "recommendation for [Ms. Lu's] mental well-being that she would be allowed to transfer to a different Longs location/branch preferably Kaneohe Longs because her primary residence is in Kaneohe."  Lu Decl., Ex. D (2/27/09 letter).

Significantly, the letter does not state that a transfer would have allowed Ms. Lu to return to work, and the letter gives no indication of when Ms. Lu would actually be able to return to work, with or without a transfer.  Instead, Dr. Wu represented (just days before sending the 2/27/09 letter, and for months

10

afterward) through the monthly disability certificates that Ms. Lu was "totally incapacitated." Lu Decl. ¶¶ 23, 25, 26, 29, 32; *see, e.g.*, Lu Dep., Ex. 39 (May 23, 2009 Disability Certificate).  He later mirrored the same assessment of total incapacitation in the FMLA documentation.  Lu Dep., Ex. 36 (June 1, 2009 FMLA documentation) at 000617–618; Lu Dep., Ex. 41 (November 27, 2009 FMLA documentation) at 000626–627.

Thus, there is no question of fact that the communications from Dr. Wu failed to convey to Longs that Ms. Lu could return to work if she obtained the accommodation of a transfer.  Ms. Lu does not argue that any other communication suggested transfer as an accommodation, or evidenced her ability to return to work, or that she ever followed up on the 2/27/09 letter.  Indeed, Ms. Lu testified at the time of her 2012 deposition that even though she had been on leave and away from the presence of Ms. Kuranishi for more than three years, she was still totally incapacitated and unable to perform the duties of her position at Longs.  Lu Dep. 15:3–18, 110:17–22.  Accordingly, a transfer would not have been a reasonable accommodation in the specific circumstances of this case because there is no evidence to suggest that a transfer would have allowed Ms. Lu to return to work and perform the essential functions of her job.  *See Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000) ("A transfer to another supervisor would not have affected this situation and therefore [the employee]

cannot show that she could perform the essential functions of her position even with the accommodation she suggested to [the employer].").

## II.     Additional Leave as a Reasonable Accommodation

In the briefing on the Motion, Ms. Lu asserts for the first time that she was also denied the reasonable accommodation of additional leave.  Longs responds that Ms. Lu is precluded from asserting a new reasonable accommodation allegation at this juncture, and the Court agrees.  The Court concludes that Ms. Lu should have put Longs on notice much earlier as to the claim of additional leave as a reasonable accommodation, and having failed to do so, Ms. Lu has waived this new and additional allegation.

Nothing in Plaintiff's communications with Longs beginning in 2008, or her physician's communications with Longs on her behalf before the inception of litigation, so much as hint that additional leave beyond her leave expiration in December 2009 was something that Plaintiff was seeking as a reasonable accommodation.  Nor was there any such suggestion in Plaintiff's communications with the EEOC as part of her effort to obtain a Notice of Right to Sue.  The Complaint also gives no indication that Ms. Lu was asserting an ADA claim against Longs based on anything other than the alleged failure to provide a *transfer* as a reasonable accommodation.  The Complaint states:

> Defendant violated Plaintiff's rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. [§§] 12102 et. seq.

12

> Plaintiff is a disabled person within the meaning of the ADA; Plaintiff is [a] qualified individual able to perform the essential functions of the job with reasonable accommodation (transfer); and Plaintiff suffered an adverse action because of her disability (termination). In addition, Plaintiff alleges that Defendant failed to enter into the interactive process with her and instead of reasonably accommodating her disability as her treating physician requested with a simple transfer, Defendant instead terminated her employment after nineteen (19) years of faithful service.

Complaint ¶ 47. Nothing in this language (or in language anywhere else in the Complaint) put Longs on notice that Ms. Lu might contend that Longs did not reasonably accommodate her by not granting her additional leave. To the contrary, the Complaint only points to the lack of a transfer as the specific ADA violation.

New allegations of ADA violations, raised for the first time in response to a motion for summary judgment, do not provide Longs with the adequate notice that is required by Fed. R. Civ. P. 8. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–969 (9th Cir. 2006) ("In response to the motion for summary judgment, [plaintiff] raised issues of ADA violations that went beyond a failure to provide a ramp. . . . . The district court did not err by holding that [plaintiff] failed to provide the [defendant employer] with adequate notice of these new allegations. . . . Thus, the complaint gave the [the defendant employer] no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment."). Consequently, Ms. Lu has waived her argument of additional leave as a reasonable accommodation. "Although the new

13

allegations were not part of the original complaint, [Ms. Lu] might have proceeded by filing a timely motion to amend the complaint.  However, [Ms. Lu] did not amend the complaint to include more specific allegations." *Id.* at 969.  The time for amending the Complaint expired on June 15, 2012, over a year ago, and Ms. Lu has made no attempt to seek such amendment; thus, Ms. Lu has not demonstrated the diligence that is necessary in order to obtain leave to amend.  *See Rundgren v. Bank of New York Mellon*, 777 F. Supp. 2d 1224, 1233 (D. Haw. 2011) ("Plaintiff cannot establish good cause, i.e., diligence, that would allow a modification of the . . . deadline to amend pleadings.").

### III.  Interactive Process

Finally, Ms. Lu contends that regardless of the Court's treatment of her claims for a transfer as a reasonable accommodation, she has an independent claim under the ADA for Longs's failure to participate in the interactive process.  This claim is specifically asserted in the Complaint.  Complaint ¶ 47.  At the hearing, counsel for Longs conceded that, for purposes of the Motion, Longs did not engage in an interactive process with Ms. Lu.  Instead, Longs contends that summary judgment is still proper because Longs was not required to interact with Ms. Lu with regard to an accommodation (transfer) that was not reasonable as a matter of law.  The Court agrees.

For the reasons discussed in the first section of this order, a transfer (the only properly alleged reasonable accommodation) does not qualify as a reasonable accommodation in this case. Consequently, although Longs would generally bear the burden of engaging in the interactive process, summary judgment is still proper here because Ms. Lu has not shown that the only accommodation she requested—a transfer away from her supervisor—qualifies as a reasonable accommodation. "[F]ailure to engage in th[e interactive] process is not itself evidence of failure to reasonably accommodate. There must first exist a reasonable accommodation that will enable the employee to perform the essential functions of the position." *Kramer v. Tosco Corp.*, 233 Fed. Appx. 593, 596 (9th Cir. 2007).

// //


// //


// //


// //

## **CONCLUSION**

Defendant Longs's Motion for Summary Judgment on Ms. Lu's Complaint is hereby GRANTED.  The Clerk's Office is directed to enter judgment in favor of Defendant Longs.

IT IS SO ORDERED.

DATED:  HONOLULU, HAWAI'I, October 11, 2013.



Derrick K. Watson
United States District Judge

------------------------------------------------------------------------------------------------------
Lu v. Longs Drugs Stores California, LLC; CV 11-00563 DKW-BMK; ORDER GRANTING DEFENDANT LONGS DRUGS STORES CALIFORNIA, LLC'S MOTION FOR SUMMARY JUDGMENT